## ACTION FOR CANCELLATION OF A CONTRACT.

Circuit Court of Cuyahoga County.

.HENRY C. BOWMAN v. BERNHARD SCHATZINGER ET AL.*

Decided, June 8, 1908.

*Contracts—Waiver of Breach of Performance by Entering into a Supplemental Agreement—Agreement for Allotment and Improvement of Lands.*

Where time for performance of an agreement is by mutual consent of
the parties extended in a supplemental contract, the right is waived
to subsequently sue for a cancellation of the original agreement for
breach of its conditions by the other party thereto, and the parties
will be understood to have covenanted, at the time of the making
of the supplemental agreement, to treat the contract as in force in
all respects, notwithstanding anything which may have happened
prior to that time.

*Weed, Miller & Nason,* for plaintiff.
*P. J. Kassulker,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

Appeal from the court of common pleas.

This is an action for the cancellation of record of a contract
entered into between the parties February 7, 1900, as amended
by supplemental agreement between them entered into on or
about May 20, 1903, but dated May 1, 1903, and to quiet plaint-
iff's title to a part of the real estate therein described.

Plaintiff and defendant were the owners of adjoining lands
situated in what was formerly the village of Glenville, but now
a part of the city of Cleveland. The original agreement recites
that "said parties, for their mutual interest, desire to allot said
lands"; that "said Schatzinger is familiar with the allotting of
lands, improving the same and handling allotments," and there-
fore it is agreed, "that the said Schatzinger is to make an allot-
ment of the lands of said two parties substantially like the
plat," which was made part of their agreement.

---

* Affirmed without opinion, *Bowman* v. *Schatzinger*, 81 Ohio State, 565.

A reference to the plat discloses that the lands of the plaintiff, Bowman, consisted of two long narrow tracts of six acres and one acre respectively, the west end of the one-acre tract slightly overlapping the east end of the six-acre tract. The east end of the smaller parcel fronts on Doan street, and, at the time the agreement was entered into, this small frontage afforded the only street access to and from the plaintiff's lands. The proposed allotment contemplated the opening up of streets in such manner as to give ample additional access to both of these tracts, through the defendant's lands. One of the proposed streets, called South Boulevard, was to run westward from Doan street, a short distance south of and parallel to the general trend of plaintiff's lands. This street was to be intersected by Haven and Hampden streets and to terminate in the North Boulevard, which was so laid out as practically to bisect plaintiff's six-acre tract lengthwise.

Thus plaintiff's lands were to be opened up in connection with defendant's lands in such manner as to facilitate the sale of lots in both. Without some such arrangement with either the defendant or some other adjacent land owner, it was manifestly impracticable for plaintiff to market his property in this manner.

The contract further provides:

"Said Schatzinger is to grade, flag and curb said streets; put in sewer, water and gas pipes and also pave the same with suitable brick, and further improve said lands as, in his opinion, is wise and practicable; the work to be started as soon as possible in the spring of 1900; South Boulevard from Doan to Haven street to be first improved and in all respects finished, but no further work to be done on North Boulevard until after said Schatzinger shall have sold three-fourths of the lots in said proposed allotment lying south of North Boulevard. So soon as said proportion of said lots are sold, then said Schatzinger to proceed with the improvements on North Boulevard and on Hampden street, completing the same without unnecessary delay.

"In case the lots on the north side of South Boulevard between Doan and Haven streets are not sold by May 1st, 1903, the interest in said lots at that time owned by said Schatzinger, his heirs or assigns, shall be appraised by disinterested persons

as follows: one to be selected by said Schatzinger, his heirs or assigns; one by said Bowman, his heirs or assigns, and if the two can not agree, then they to select a third, and the decision of any two of the three thus chosen shall be binding on both parties; and said Bowman, his heirs or assigns, shall thereupon pay to said Schatzinger, his heirs or assigns, the value of the interest of said Schatzinger so established by said appraisers, upon receipt from said Schatzinger, his heirs or assigns, of lawful conveyance of said interest, free and clear of all encumbrance, accompanied with abstract of title.''

The remainder of the original contract relates to the manner of meeting the expenses of the undertaking and the division of the proceeds, specifically providing, however, that ''said Schatzinger is to have full charge of alloting, improving and disposing of said lands.''

The key to the opening up of plaintiff's lands was manifestly the opening and improving of South Boulevard from Doan street to Haven street, and thence along Haven street northward to the south line of plaintiff's property.

The contract provided, as already indicated, that the street improvements were ''to be started as soon as possible in the spring of 1900; South Boulevard from Doan to Haven streets to be first improved and in all respects finished.'' This was not done, but, on the contrary, the defendant proceeded to open up and improve other streets in the allotment in such manner as to facilitate the sale of his own lands.

For three years scarcely anything was done to improve the east end of South Boulevard between Haven and Doan streets, nor has anything been done to this day upon Bowman's lands, excepting a little grading and the planting of some trees along the proposed line of North Boulevard.

During said three years plaintiff gave little personal attention to the defendant's management of the allotment, although he kept informed of its progress from time to time through defendant's engineer. Soon after the 1st of May, 1903, and about three and a quarter years after the making of the original agreement, plaintiff advised defendant that the time having arrived for the appraisal provided for therein, he had appointed as appraiser Daniel R. Taylor, and requested that defendant appoint

an appraiser also. The defendant replied that he had given the matter of an appraisal no thought and suggested an extension of the time therefor; whereupon both parties entered into the following supplemental agreement modifying the original contract:

"This is to certify that all the terms and conditions to be performed by Henry C. Bowman and Bernhard Schatzinger on May 1st, 1903, under the terms of a certain written contract between Bernhard Schatzinger and Henry C. Bowman, dated February 7, 1900, are by mutual consent to be performed on or before June 1st, 1903, to which time the performance of said terms and conditions are extended, without, however, invalidating or changing any other provision of said contract."

Nothing further was done by the parties until the later date agreed upon had come and gone. On the 9th of June, however, plaintiff served upon the defendant notice of cancellation of the entire agreement and demanded that defendant execute a quit-claim deed of plaintiff's part of the property, so that plaintiff's title might be relieved of the cloud which their agreement and the recording thereof cast upon it.

The defendant paid no attention to this notice and demand, but soon afterwards went forward with and completed the improvement of the east end of South Boulevard and the north end of Haven street nearly up to plaintiff's line. Not until defendant had completed all the street improvements with respect to which he was in default did plaintiff commence this action to enforce the rescission contemplated by his notice and demand of June 9, 1903. Except for the defendant's delay in fulfilling the agreements by him to be performed, plaintiff at the time he began his action had acquired nearly all of the access to and from his lands which he sought to gain under the agreement. During the pendency of the suit enough lots have been sold in defendant's part of the allotment to make it incumbent upon him, under the terms of the original agreement, to go forward now with the improving of North Boulevard, which, as already stated, practically bisects longitudinally plaintiff's larger tract, and which when improved, will open up the lots in said tract to immediate sale for building purposes.

The defendant offers two excuses for his failure to improve the east end of South Boulevard at the outset of the undertaking: First, he says that the agreement should be so construed as to qualify his obligation in this behalf and limit it by the words "and further improve said lands as, in his opinion, is wise and practicable." Secondly, he shows that because Doan street was not so improved when said agreement was entered into nor at any time within the next three years as to permit proper drainage from the east end of South Boulevard, it was not wise and practicable to improve that portion of South Boulevard during that period of time.

We do not regard either of these excuses as valid, for we do not construe the agreement as defendant construes it, nor do we find anything in the agreement to indicate that the covenant requiring South Boulevard from Doan to Haven streets to be first improved and in all respects finished, was in any sense dependent upon the action or non-action of the public authorities in sewering Doan street.

Were it not, therefore, for the supplemental agreement, already quoted, we should have no hesitation in holding that the plaintiff was entitled to rescind the contract for defendant's failure to perform the same. At the date when that supplemental agreement was entered into, the terms and conditions required by the original contract to be performed by defendant were essentially unperformed. The plaintiff, however, instead of standing upon this breach by defendant and refusing to be further bound by the contract, covenants with him "that all the terms and conditions to be performed by Henry C. Bowman and Bernhard Schatzinger on May 1st, 1903, under the terms of a certain written contract between Bernard Schatzinger and Henry C. Bowman, dated February 7th, 1900, are by mutual consent to be performed on or before June 1st, 1903, to which time the performance of said terms and conditions are extended, without, however, invalidating or changing any other provisions of said contract."

This amounts to nothing else, as we view it, than an agreement that whatever remained undone on May 1st, 1903, which should have been done on that date, was not to be accounted such a

breach of the contract as to authorize either party to repudiate it. It was, on the contrary, a covenant by both parties that they would treat the contract as in all respects in force, notwithstanding anything that might have happened prior to that time.

True, the extension contemplated by the supplemental agreement expired by its terms on June 1st, and it was not until after that date that plaintiff assumed to rescind the entire agreement. But plaintiff meanwhile took no new steps to secure an appraisal and it was certainly not in the contemplation of the parties that the improving of the east end of South Boulevard, which had theretofore been neglected, should all be done in the interval of twelve days, between May 20, 1903, when the supplemental agreement was actually executed, and the 1st of June next succeeding. It simply provided, as we read it, that the performance of all the terms and conditions which were to have been accomplished May 1, 1903, might be postponed until June 1, 1903, and that nothing which had theretofore failed of due performance should be fatal to the continuance of the contract. The right of rescission, for any breach of the original contract occurring before the execution of this supplementary contract, was effectually waived when the latter was executed, and it can not be said that there was any such breach intervening between that time and the 9th of June as to authorize a court of equity now to aid an attempted recission on that date, especially as the plaintiff waited two and one half years longer before bringing his suit.

The original agreement was then so far executed (and still more so now) as to make it utterly impracticable to restore the defendant to his former position. When, therefore, after the lapse of more than three years, and in spite of defendant's dereliction, the plaintiff expressly reaffirmed that agreement and consented to extend the time of its performance, he can not be heard to change such affirmance into disaffirmance before three weeks had elapsed and without any new cause intervening save mere inaction for that period. By such disaffirmance he seeks to retain all the realized advantage of his contract and to condemn defendant to all the disadvantage of its annulment. Whatever advantage or remedy at law may be available to plaintiff under the circumstances, he can not, after having entered into

the supplemental agreement and for cause theretofore arisen, successfully invoke the interposition of equity in furtherance of the result thus indicated. *Leeds* v. *Simpson and Knox*, 16 O. S., 321.

There are many other questions of fact in the voluminous transcript of testimony admitted in evidence before us here, but we think it unnecessary to examine them in view of the conclusions which we reach regarding the effect of the supplemental agreement, as we construe it.

The plaintiff is not, we think, entitled to the relief for which he prays, and he must be remitted to his remedy, if any, in damages, for the matter of which he complains.

The petition will be dismissed.